UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

GREGORY JONES                            :
                                         :
          v.                             :          C.A. No. 09-206S
                                         :
MICHAEL J. ASTRUE                        :
Commissioner of the Social Security      :
Administration                           :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

        This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act ("Act"),

42 U.S.C. § 405(g).  Plaintiff filed his Complaint on April 30, 2009 seeking to reverse the decision

of the Commissioner.  On December 31, 2009, Plaintiff filed a Motion for an Order Reversing the

Decision of the Commissioner.  (Document No. 8).  On February 1, 2010, the Commissioner filed

a Motion for an Order Affirming the Decision of the Commissioner.  (Document No. 9).

        This matter has been referred to me for preliminary review, findings and recommended

disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties'

submissions and independent legal research, I find that there is substantial evidence in this record

to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning

of the Act.  Consequently, I recommend that the Commissioner's Motion for an Order Affirming

the Decision of the Commissioner (Document No. 9) be GRANTED  and Plaintiff's Motion for an

Order Reversing the Decision of the Commissioner (Document No. 8) be DENIED.

### I.       PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on November 24, 2006, alleging disability since

January 1, 2000.  (Tr. 117-126).  His date last insured for DIB was September 30, 2003.  (Tr. 9).

The applications were denied initially (Tr. 69-78) and on review.  (Tr. 59-67).  Plaintiff requested

an administrative hearing.  (Tr. 68).  On November 18, 2008, Administrative Law Judge Barry H.

Best (the "ALJ") held a hearing at which Plaintiff, represented by counsel, and a vocational expert

("VE") appeared and testified.  (Tr. 17-54).  The ALJ issued a decision unfavorable to Plaintiff on

December 18, 2008.  (Tr. 4-16).  The Appeals Council denied Plaintiff's request for review on

March 19, 2009.  (Tr. 1-3).  A timely appeal was then filed with this Court.

### II.      THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred in giving "significant probative weight" to the opinion

(Ex. 3F) of Dr. Amir Missaghian, a nonexamining state agency physician.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ properly evaluated

Dr. Missaghian's opinion and that the ALJ's RFC assessment was not exclusively based on such

opinion and is supported by substantial evidence.

### III.     THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.

42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such relevant evidence

as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health

and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and

Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must

affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v.

Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356,

1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence

favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs.,

829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must

consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies

incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he

or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam);

accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where

all of the essential evidence was before the Appeals Council when it denied review, and the evidence

establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11

(1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42

U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276

F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's

decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the

law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id.

The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.   THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.   Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

### E.     Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

1.   Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42

U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)    Treatment, other than medication, for relief of pain;
>
> (5)    Functional restrictions; and
>
> (6)    The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.  Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was forty-four years old on the date of the ALJ's decision.  (Tr. 117).  Plaintiff obtained his GED (Tr. 141) and has past relevant work as a printer and a forklift operator.  (Tr. 14, 24, 138).  Plaintiff alleged disability due to ACL replacement, arthritis and a pinched nerve.  (Tr. 137).

On April 22, 2006, Plaintiff underwent a left knee MRI which revealed moderate osteoarthritis, a remote ACL rupture, joint effusion, a small Baker's cyst, and complex, predominantly vertical oriented tears of the posterior horns of both the medial and lateral menisci.  (Tr. 171-172).

Dr. Henry Urbaniak noted on June 15, 2006, that Plaintiff was complaining of pain in his left elbow.  (Tr. 262).  On examination, Dr. Urbaniak observed that while Plaintiff was tender to palpation about the lateral epicondyle and common extensor tendon, had reduced grip strength in his left hand, and was tender throughout the medial and lateral aspects of the joint line of his left knee, his left upper extremity was neurovascularly intact.  Id.  Three weeks later, Dr. Michael

Feldman found that Plaintiff was in no acute distress, his left knee alignment and gait were normal, he had no swelling or effusion and he was only experiencing mild tenderness over the medial and lateral joint line. (Tr. 260). Dr. Feldman also observed that while Plaintiff's Flexion pinch and McMurray's test results were positive, his left hip, knee and ankle motor testing was normal, he had no sensory deficits or instability to varus or valgus stress and his Lachman and Anterior drawer tests of the left knee revealed only trace laxity. Id.

On October 16, 2006, Plaintiff underwent an arthroscopy of his left knee, chondroplasty of the patella and medial femoral condyle and ACL reconstruction. (Tr. 233-235). On October 25, 2006, Dr. Feldman saw Plaintiff for a post-op visit and found that he was in no acute distress, his lower extremity sensation was intact, he had ninety degrees of flexion and he could perform a straight leg raise. (Tr. 257). The following month, Dr. Feldman observed that while Plaintiff had one plus effusion and his quadricep motor strength was rated as four plus out of five, he was in no acute distress, he had only a mild limp, he was not tender to palpation over the major bony and soft tissues landmarks of his left knee, he had no sensory deficits or instability to varus and valgus stress and his Lachman and Flexion pinch tests were negative. (Tr. 255). Plaintiff was attending physical therapy three times per week with improvement. Id.

Ms. Courtney Peck, a Physician's Assistant, found on December 18, 2006, that Plaintiff was in no acute distress, his sensation was intact, his extension was full, he had no swelling or significant discomfort with valgus or varus stressing, he was able to flex to one hundred degrees with only mild pain and his Anterior drawer and Lachman tests demonstrated stability. (Tr. 253). The next month, Mr. Rodney Larcom, also a Physician's Assistant, observed that Plaintiff was in no acute distress,

he had no sensory deficits, his left hip, knee and ankle motor testing was normal and he had only trace effusion and mild tenderness over the medial joint line. (Tr. 251).

Dr. Tesfaye Meren observed on February 9, 2007, that Plaintiff was in no acute distress, his cervical and lumbar spine range of motion were normal, his upper and lower extremity joint range of motion were normal and his hand, elbow, and shoulder joints had intact range of motion with no swelling or tenderness. (Tr. 191). Plaintiff was then seen by Dr. Marven Leftick on February 13, 2007, for a rheumatologic consultation. (Tr. 199). Dr. Leftick noted that Plaintiff had not been taking narcotic pain medications for a month, and he was alert, oriented and in no distress. (Tr. 200). On examination, Dr. Leftick determined that Plaintiff's manual dexterity was well maintained, his small hand joints, wrists, and elbows were generally unremarkable, and he had no significant myofascial pain. Id. He further observed that while Plaintiff's shoulders and left knee were tender, his neck range of motion was reduced and his straight leg raising was limited, his gait was normal, he was able to flex forward and his hips, right knee, ankles and feet were unremarkable. Id. Dr. Leftick added that Plaintiff's cervical spine x-rays revealed multilevel degenerative changes, and his shoulder x-ray demonstrated well-maintained joint spacing and alignment. (Tr. 216). A Nerve Conduction Study was also performed on the same date, and the results were consistent with bilateral ulnar neuropathy. (Tr. 223).

On March 12, 2007, Dr. Leftick found that Plaintiff was not in distress, his neck was tender on extension and lateral movements to the left, he had left upper extremity numbness on end range of motion and he had residual pain and swelling in his left knee. (Tr. 198). Four days later, Plaintiff underwent a cervical spine MRI which revealed that he had multilevel degenerative disc disease with mild spinal stenosis at C4-5 and C5-6 and left foraminal stenosis at C3-4 and C4-5. (Tr. 211).

Dr. Feldman found on April 4, 2007, that while Plaintiff had moderate atrophy in his quadriceps, he was in no acute distress, his gait was normal and there was no swelling or tenderness to palpation over the major bony and soft tissues of his left knee.  (Tr. 247).  He also observed that Plaintiff had no sensory deficits or instability on varus or valgus stress, and his Lachman, Anterior drawer, Pivot shift, Flexion pinch and McMurray tests on the left knee were negative.  Id.  The following week, Dr. Meren found that Plaintiff's left knee had no swelling or redness, there was no tenderness on jointlines or collateral ligaments and his flexion and extension were normal.  (Tr. 189). He also observed that Plaintiff was in no acute distress, his neck and shoulder joint range of motion were normal, his extremities had no edema, his gait was normal and he was "psych appropriate."  Id.  The next month, Dr. Meren found that Plaintiff was in no acute distress, his straight leg raising test and Babinksi were negative, his gait and motor and sensory systems were normal and on palpation, he had no vertebral spine tenderness, paraspinal spasms or tenderness in his SI joints. (Tr. 187).

On June 6, 2007, Plaintiff underwent a left knee MRI, and the test revealed a strain or partial tearing of the ACL graft, moderate tricompartmental degenerative arthropathy, quadricep tendinopathy and an MCL strain.  (Tr. 227-228).  Dr. Feldman then found on June 6, 2007, and also on June 13, 2007, that Plaintiff was in no acute distress, his left knee alignment and gait were normal, and there was no swelling or tenderness to palpation over the major bony and soft tissues of the left knee. (Tr. 245, 278).  He also observed that Plaintiff's left knee, hip and ankle motor testing was normal, he had no sensory deficits or instability on varus or valgus stress and his Lachman, Anterior drawer and McMurray tests were negative.  Id.

On July 17, 2007, Dr. Leftick noted that Plaintiff was staying home to care for his son, and he did housework which he found difficult. (Tr. 194). Dr. Leftick then observed that while Plaintiff's neck was stiff, his left knee was tender on end movement, his trapezia were tight and he had some restrictions due to tight hamstrings; his upper extremity joints and right knee were unremarkable, his gait was well preserved, and his shoulders, low back and hips moved well. (Tr. 195).

On July 23, 2007, Dr. Deus Cielo, a Neurosurgeon, noted that he had conducted an initial neurosurgical consultation due to Plaintiff's complaints of worsening neck pain. (Tr. 271). Dr. Cielo observed that Plaintiff was in no acute distress, his extremities had no edema, he was alert and oriented to three spheres, his shoulder shrug was strong bilaterally and his speech was fluent. (Tr. 272). Dr. Cielo also found that Plaintiff had full strength in his extremities bilaterally, his sensory examination was intact, his finger to nose testing and gait were normal, his straight leg raising and Spurling's sign were negative, and he had no tenderness to palpation or decreased range of motion in his spine. Id. Dr. Cielo referred Plaintiff for cervical epidural steroid injections. Id.

On September 17, 2007, Dr. Meren observed that while Plaintiff was experiencing right wrist swelling, tenderness and decreased range of motion in flexion, he was in no acute distress, and his sensation was intact. (Tr. 276). Two days later, Dr. Feldman found that Plaintiff was in no acute distress, his left knee alignment was normal, and there was no swelling or tenderness to palpation over the major bony and soft tissue landmarks in his left knee. (Tr. 243). Dr. Feldman also observed that Plaintiff's left knee, ankle and hip motor testing was normal, he had no sensory deficits or instability to varus or valgus stress, and his Pivot shift, Anterior drawer, Flexion pinch and McMurray tests were negative. Id.

-15-

Dr. Eric Walsh observed on November 8, 2007, that Plaintiff had a small laceration over the volar aspect of his wrist from an accident at home, he was extremely sensitive to touch over the swollen area, his volar sensation was disrupted on the thumb, and he had thenar wasting and weakness with opposition. (Tr. 238). Dr. Walsh also found, however, that Plaintiff was in no acute distress, and his FPL, FDS, FDP and FCR tendons and distal sensation were intact. Id. Eight days later, Plaintiff had a right wrist MRI, and the study revealed that while there was small radioulnar joint effusion and subchondral cystic changes, there was no obvious disruption involving the median nerve, and the overlying flexor compartment retinaculum of the carpal tunnel and flexor tendons were intact. (Tr. 225).

Plaintiff had surgery to correct a right median nerve laceration on December 19, 2007. (Tr. 231-232). On January 2, 2008, Dr. Walsh saw Plaintiff for a post-op visit and observed that Plaintiff was in no acute distress, his ulnar and radial nerve sensation were intact, his passive wrist range of motion caused no pain, he experienced only mild stiffness and he was able to fully extend without difficulty. (Tr. 229).

Plaintiff's records were also reviewed by Dr. Amir Missaghian, a non-examining physician, on January 3, 2007. He found that Plaintiff could lift ten pounds frequently and twenty pounds occasionally, stand and walk for at least two hours in an eight-hour day and sit for about six hours in an eight-hour day. (Tr. 180). He also determined that Plaintiff's ability to push/pull was limited in his lower extremity, he could never climb ladders, ropes or scaffolds, and he could only occasionally balance, stoop, kneel, crouch, crawl and climb stairs. (Tr. 180, 181).

**A.** **The ALJ's Decision**

The ALJ decided this case adverse to Plaintiff at Step 5.  He found that Plaintiff's neck/spine and left knee impairments were "severe" as defined in 20 C.F.R. §§ 404.1521 and 416.921 but not of Listing-level severity.  (Tr. 10-12).  He further found that Plaintiff retained the RFC to perform a limited range of light work with postural and environmental limitations and a moderate impairment of his ability to maintain attention and concentration.  (Tr. 12-14).  Based on testimony from the VE, the ALJ determined that Plaintiff was unable to perform his past work but could make a successful adjustment to other unskilled, light and sedentary jobs existing in significant numbers.  (Tr. 14-15).

**B.     The ALJ's RFC Finding is Supported by Substantial Evidence**

Plaintiff argues that the ALJ's RFC finding is flawed because it is "not supported by a medical opinion from any medical source who had seen all or even most of the medical evidence." (Document No. 8 at 8).  In particular, Plaintiff faults the ALJ's decision to give "significant probative weight" to Dr. Missaghian's opinion because he did not have the benefit of reviewing subsequent medical records.  Id.[1]  Dr. Missaghian rendered his opinion on January 3, 2007 (Ex. 3F) but the record before the ALJ included medical records through 2007 and most of 2008.  His was the only RFC opinion on file.  Although the record contains records from several treating sources, none of those sources specifically opined on Plaintiff's RFC or ability to work.

Plaintiff relies primarily on the First Circuit's per curiam opinion in Alcantara v. Astrue, No. 07-1056T, 2007 WL 4328148 (1st Cir. Dec. 12, 2007).  However, Alcantara is distinguishable on its

---

[1]  Although Plaintiff generally references some of this medical evidence (Document No. 8 at pp. 8-9), Plaintiff fails to point out any specific, objective evidence that contradicts the ALJ's ultimate finding that he could perform a limited range of light work.  In the absence of such a showing, any error by the ALJ in the degree of reliance on Dr. Missaghian's opinion would be harmless.  In addition, the VE testified as to the significant number of unskilled sedentary jobs (Tr. 15, 35) which would be available to Plaintiff if the ALJ assessed his RFC at a sedentary rather than light exertional level.  In other words, even if the ALJ assessed a more restrictive RFC, the outcome would not have changed.

-18-

facts.[2]  In Alcantara, the First Circuit remanded where the ALJ relied "primarily" on the opinion of

one non-examining consultant and discounted the opinions of two other non-examining consultants,

a treating psychiatrist and a therapist.  Id. at *1.  The First Circuit found error because the preferred

consultant's opinion was both based on a "significantly incomplete record" and was "not well

justified."  Id. (citing 20 C.F.R. § 416.927(d)).  It also found fault with the ALJ's unsupported

statement that the record underwent "no material change" after the preferred consultant's opinion

was rendered when in fact there was evidence of a subsequent material deterioration of Plaintiff's

mental health.  Id.

In this case, Plaintiff does not argue that Dr. Missaghian's RFC assessment is not well

justified.  In fact, Dr. Missaghian specifically identified the medical evidence which supported his

RFC opinion.  (Tr. 180-181).  Further, although Plaintiff continued receiving treatment after Dr.

Missaghian's opinion was rendered, Plaintiff has not shown any material change in his functional

abilities during that period.  In addition, the ALJ in this case did not rely "primarily" on Dr.

Missaghian's opinion.  Although the ALJ gave Dr. Missaghian's opinion "significant probative

weight," he did not do so in a vacuum.  In other words, the ALJ did not exclusively rely on Dr.

Missaghian's opinion, and he thoroughly analyzed and considered Plaintiff's statements and

testimony as well as a significant body of treating source medical records.  (Tr. 10-14).

When you boil it down, Plaintiff's basic premise is that the ALJ should have "called a

medical expert to the hearing or had a medical expert review the file and offer an opinion."

(Document No. 8 at 10).  However, the decision as to whether or not to utilize a medical expert is

---

[2] Another relevant distinction is that Alcantara was solely an SSI case while Plaintiff, in this case, filed for both SSI and DIB.  Since his date last insured for DIB was September 30, 2003, Plaintiff's medical history after Dr. Missaghian's January 3, 2007 report is marginally relevant, if at all, to Plaintiff's disability status on or prior to September 30, 2003.

within the ALJ's discretion, and the failure to do so is not per se a basis for reversal.  See Hodgkins v. Barnhart, No. 03-179-P-4, 2004 WL 1896996 (D. Me. Aug. 25, 2004) (citing Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 5 (1st Cir. 1987)).  Thus, the issue in this appeal is not whether the ALJ should have called a medical expert to testify but rather whether the ALJ's RFC finding is supported by substantial evidence in the absence of medical expert testimony.

Here, the ALJ carefully considered Plaintiff's statements regarding his symptoms and limitations and simply found that Plaintiff was not entirely credible (Tr. 13) – a determination that has not been challenged in this appeal.  Finally, the ALJ found Dr. Missaghian's RFC opinion to be consistent with and supported by the record as a whole including the subsequent treatment records discussed in detail by the ALJ.  (Tr. 13-14).

If the Court takes the logic of Plaintiff's argument in this appeal to its extreme, then it arguably would have to find error every time an ALJ based an RFC assessment on anything but a consulting expert opinion rendered at or shortly before the ALJ hearing.  This is neither practical nor required.  The regulations expressly provide that a claimant's RFC is to be assessed by the ALJ "based on all of the relevant medical and other evidence" including descriptions and observations of limitations provided by the claimant and others.  See 20 C.F.R. §§ 404.1545(a)(3) and 1546(c). See also Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987) (rejecting the proposition that "there must always be some super-evaluator, a single physician who gives the [ALJ] an overview of the entire case").  "[I]t is not inappropriate for an [ALJ] to consider the opinions of state agency doctors in conjunction with other evidence of record...[because the ALJ] is entitled to piece together the relevant medical facts from the findings and opinions of multiple physicians."  Dietz v. Astrue, C.A. No. 08-30123-KPN, 2009  WL 1532348 at *6 (D. Mass. May

29, 2009).  The ALJ based his RFC assessment in this case on several elements including Dr. Missaghian's opinion, his opinion regarding the credibility of Plaintiff's statements as to his pain and limitations and the medical records of treating physicians; and Plaintiff has shown no legal error in the ALJ's evaluation of such evidence.  Thus, since the ALJ's RFC finding of a limited range of light work is sufficiently supported by the record, it is entitled to deference.

## VI.      CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED and Plaintiff's Motion for an Order Reversing the Decision of the Commissioner (Document No. 8) be DENIED. I further recommend that the District Court enter Final Judgment in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 19, 2010